■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DAVID TOLLIVER, Respondent.—Appeal by the People from an order of the Supreme Court, Kings County (Fertig, J.), dated October 6, 1987, which granted those branches of the defendant's omnibus motion which were to suppress physical evidence and his statements to law enforcement officials.

Ordered that the order is reversed, on the law, those branches of the defendant's omnibus motion which were to suppress physical evidence and his statements to law enforcement officials are denied, and the matter is remitted to the Supreme Court, Kings County, for further proceedings consistent herewith.

Late in the afternoon of April 13, 1987, the defendant had a street encounter with the police which resulted in the search of his person and the recovery of a fully loaded, .22 caliber revolver. The defendant was indicted and charged with criminal possession of a weapon in the third degree. On this appeal, the People argue that the police conduct was justified at its inception and was reasonably related in scope to the attendant circumstances. It is further contended that the hearing court erred in finding the initial police approach of the defendant unlawful and, therefore, should not have granted suppression of the gun and subsequent statements made by the defendant to the police as products of the illegal police conduct.

The testimony of the arresting officer, Thomas Negron, at the suppression hearing revealed that on the afternoon of April 13, 1987, he was involved in a "buy and bust" operation at 2092 Dean Street in Brooklyn. He was assigned to secure the front of the building while the buy and bust operation was

conducted inside. The April 13th activity was the seventh or eighth buy and bust operation Officer Negron had been involved in at that location.

After the initial operation was completed, Officer Negron sat in an unmarked police vehicle parked in front of the Dean Street building with another police officer and a person who had been arrested earlier. At approximately 5:10 P.M. Officer Negron observed the defendant, who was wearing an open trench coat, and another man walking down the block toward the Dean Street building. As they neared the entrance to the building, Officer Negron noticed that the defendant had a sum of money in his hand. The defendant entered the building while his companion waited outside. About five seconds later, the defendant emerged from the building with the currency still in his hand. As he was exiting, the defendant was adjusting his sweater and touched his waistband.

Officer Negron then got out of the unmarked police vehicle and waited on the sidewalk for the defendant and his companion to approach. Identifying himself as a police officer, Officer Negron asked the defendant for an explanation for his presence in the building and why he was carrying money in his hand. The defendant responded that he was visiting a girl in the building, but when the officer asked him what apartment the girl lived in the defendant said that he did not know. During the inquiry, the defendant appeared nervous and fidgety and was looking around. The defendant's companion, who smelled of alcohol, started creating a disturbance, yelling at Officer Negron "What are you hassling him for. Leave him alone. That's my son". The officer asked the man to quiet down while he asked the defendant a few questions and then they could proceed on their way. However, the officer's entreaty was ignored and the companion continued to be loud and boisterous. In order to speak to the defendant undisturbed, Officer Negron asked him to step into the doorway of an adjoining abandoned building about 3 to 5 feet from where they had been standing. To this point, Officer Negron had not touched the defendant or drawn a weapon. The other individual followed them and continued hollering. The defendant raised his arms gesturing his companion to stay away. As he did so, the defendant's sweater rode up and Negron saw a bulge in his waistband that appeared to be the handle of a gun. Officer Negron conducted a pat-down search and retrieved a loaded .22 caliber revolver. About a minute or two had elapsed from the time Negron first stopped the defendant until the recovery of the gun. Following his arrest for weapons

possession, the defendant made certain statements to the police.

The court suppressed the gun, ruling that the necessary predicate to justify the stop, i.e., that the police had reasonable suspicion that the defendant was involved in criminal activity, had not been established. The gun seized and the statements made following the defendant's arrest were, therefore, suppressed as the product of unlawful police conduct.

We voice our agreement with the People's contention that Officer Negron, in exercising his common-law right to inquire, was justified in approaching the defendant and his companion in an effort to obtain explanatory information. It is well settled that in the absence of any concrete indication of criminality, a police officer may approach a private citizen on the street for the purpose of investigation if he can point to specific and articulable facts which warrant the intrusion *(People v De Bour,* 40 NY2d 210, 223; *see also, People v Carrasquillo,* 54 NY2d 248, 252-253; *People v Howard,* 50 NY2d 583, *cert denied* 449 US 1023). Under this first level of permissible police intrusion, no reasonable suspicion of criminal activity is required unless the police escalate the encounter by exercising restraint over the individual *(see, People v Harrison,* 57 NY2d 470, 476; *People v Smith,* 117 AD2d 690). At bar, the defendant's entry into a building of known drug-trafficking activity where an earlier drug operation had produced arrests and with money clutched in his hand provided the necessary predicate for the initial police inquiry. Officer Negron merely inquired as to the defendant's presence in the building and the reason he was carrying money in his hand. The inquiry was devoid of intimidation or harassment. Officer Negron did not approach with his gun drawn or otherwise exercise restraint over the defendant. Nor did Officer Negron's request to the defendant to step into the foyer of the building adjoining 2092 Dean Street elevate the level of police intrusion to an actual seizure of the defendant within the meaning of the 4th Amendment *(see generally, People v Harrison,* 57 NY2d 470, *supra; People v Cantor,* 36 NY2d 106). Officer Negron was simply seeking to conduct the inquiry without the intrusion of the disruptive behavior of the defendant's companion. The defendant voluntarily accompanied the officer. Therefore, reasonable suspicion that criminal conduct had occurred was not required *(see, People v Smith,* 117 AD2d 690, *supra).* Officer Negron's subsequent observation during the inquiry of a bulge in the defendant's waistband, constituting the "telltale of a weapon", provided the necessary predicate

for a pat-down search *(see, People v Sims,* 127 AD2d 712; *People v Milton,* 115 AD2d 666). The discovery of a loaded .22 caliber revolver in the defendant's possession gave Officer Negron probable cause to arrest the defendant.

We further conclude that the defendant's statements to the police should not have been suppressed. The defendant's initial statement to the police following his arrest in which he admitted his possession of the gun was uttered spontaneously *(see, People v Sims,* 127 AD2d 712, *supra; People v Porter,* 110 AD2d 662). His remaining statements were made voluntarily following advisement of his *Miranda* rights. Mollen, P. J., Thompson and Weinstein, JJ., concur.

Brown, J., dissents and votes to affirm the order appealed from, with the following memorandum in which Harwood, J., concurs: The question on this appeal is whether the facts presented provide a reasonable basis for the level of the police conduct exercised. I find that they do not and, accordingly, believe that the hearing court properly granted suppression.

It is well established that the exercise of the common-law right of inquiry not involving either actual or constructive restraint need not be based upon a reasonable suspicion of criminal conduct of the individual *(People v Carrasquillo,* 54 NY2d 248; *People v De Bour,* 40 NY2d 210). Nonetheless, even such a limited intrusion and inquiry must be predicated upon the existence of some credible objective facts which support a suspicion that criminal activity is afoot *(People v Carrasquillo, supra,* at 252-253; *People v Medina,* 107 AD2d 302, 304). It may not be based upon mere whim or caprice *(People v De Bour, supra,* at 223).

At bar, I would agree with the Supreme Court that there was no conduct on the part of defendant which warranted the exercise of the right of inquiry. Unlike *De Bour,* where the defendant, upon approaching the police officers, crossed the street to avoid walking past them, the defendant here made no attempt to avoid contact with Officer Negron, whose police identification was clearly displayed. Further, while it is true that, as in *De Bour,* the encounter here took place in an area known for narcotics trafficking, it was not a late night encounter, but occurred during the afternoon hours. Moreover, as noted by the Supreme Court, even though the defendant entered the building which was a known drug location, the brevity of his presence therein, 3 to 5 seconds, and the fact that he exited the building with the money still in his hands, makes it clear that the defendant could not have been involved in an illicit drug purchase.

Even assuming, arguendo, however, that the circumstances did justify the exercise of Negron's common-law right of inquiry, the level of intrusion here, where Officer Negron himself testified that he intended to stop the defendant because he believed he had gone into the building to purchase narcotics, went beyond mere inquiry. Thus, it would appear that Negron was operating, not on the basis of the common-law right of inquiry, but on the basis of reasonable suspicion of criminal activity. Regardless of Officer Negron's beliefs as to the basis for his actions, however, by his conduct in physically removing the defendant from the sidewalk into the adjacent building, he elevated the level of the intrusion from a mere sidewalk encounter into a brief detentive stop which could only be justified by reasonable suspicion that the defendant had engaged in criminal activity (cf., People v Carrasquillo, 54 NY2d 248, supra; People v De Bour, 40 NY2d 210, supra). Although Officer Negron testified that the defendant was free to leave at any time, it is also clear from his testimony that the defendant was upset at the continued questioning and felt he was being harassed. Yet, the officer persisted in questioning him and even removed him into a secluded location to continue his questioning.

Under the circumstances, I find that the arrest here was the product of an unlawful intrusion and that, therefore, the weapon seized and the statement obtained as products thereof were properly suppressed.