## PENNSYLVANIA *v.* BRUDER

No. 88–161.   Decided October 31, 1988

PER CURIAM.

Because the decision of the Pennsylvania Superior Court in this case is contrary to *Berkemer* v. *McCarty*, 468 U. S. 420 (1984), we grant the petition for a writ of certiorari and reverse.

In the early morning of January 19, 1985, Officer Steve Shallis of the Newton Township, Pennsylvania, Police Department observed respondent Thomas Bruder driving very erratically along State Highway 252.   Among other traffic violations, he ignored a red light.   Shallis stopped Bruder's vehicle.   Bruder left his vehicle, approached Shallis, and when asked for his registration card, returned to his car to obtain it.   Smelling alcohol and observing Bruder's stumbling movements, Shallis administered field sobriety tests,

including asking Bruder to recite the alphabet. Shallis also inquired about alcohol. Bruder answered that he had been drinking and was returning home. Bruder failed the sobriety tests, whereupon Shallis arrested him, placed him in the police car, and gave him *Miranda* warnings. Bruder was later convicted of driving under the influence of alcohol. At his trial, his statements and conduct prior to his arrest were admitted into evidence. On appeal, the Pennsylvania Superior Court reversed, 365 Pa. Super. 106, 528 A. 2d 1385 (1987), on the ground that the above statements Bruder had uttered during the roadside questioning were elicited through custodial interrogation and should have been suppressed for lack of *Miranda* warnings. The Pennsylvania Supreme Court denied the State's appeal application.

In *Berkemer* v. *McCarty, supra,* which involved facts strikingly similar to those in this case, the Court concluded that the "noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." *Id.*, at 440. The Court reasoned that although the stop was unquestionably a seizure within the meaning of the Fourth Amendment, such traffic stops typically are brief, unlike a prolonged station house interrogation. Second, the Court emphasized that traffic stops commonly occur in the "public view," in an atmosphere far "less 'police dominated' than that surrounding the kinds of interrogation at issue in *Miranda* itself." *Id.*, at 438–439. The detained motorist's "freedom of action [was not] curtailed to 'a degree associated with formal arrest.'" *Id.*, at 440 (citing *California* v. *Beheler*, 463 U. S. 1121, 1125 (1983)). Accordingly, he was not entitled to a recitation of his constitutional rights prior to arrest, and his roadside responses to questioning were admissible.[1]

---

[1] We did not announce an absolute rule for all motorist detentions, observing that lower courts must be vigilant that police do not "delay formally arresting detained motorists, and . . . subject them to sustained

The facts in this record, which Bruder does not contest, reveal the same noncoercive aspects as the *Berkemer* detention: "a single police officer ask[ing] respondent a modest number of questions and request[ing] him to perform a simple balancing test at a location visible to passing motorists." 468 U. S., at 442 (footnote omitted).[2] Accordingly, *Berkemer*'s rule, that ordinary traffic stops do not involve custody for purposes of *Miranda*, governs this case.[3] The judgment of the Pennsylvania Superior Court that evidence was inadmissible for lack of *Miranda* warnings is reversed.

*It is so ordered.*

JUSTICE MARSHALL, dissenting.

I agree with JUSTICE STEVENS that the Court should not disturb the decision of the court below, and accordingly I join his dissent. I write separately to note my continuing belief that it is unfair to litigants and damaging to the integrity and accuracy of this Court's decisions to reverse a decision summarily without the benefit of full briefing on the merits of

---

and intimidating interrogation at the scene of their initial detention." *Berkemer* v. *McCarty*, 468 U. S. 420, 440 (1984).

[2] Reliance on the Pennsylvania Supreme Court's decision in *Commonwealth* v. *Meyer*, 488 Pa. 297, 412 A. 2d 517 (1980), to which we referred in *Berkemer*, see 468 U. S., at 441, and n. 34, is inapposite. *Meyer* involved facts which we implied might properly remove its result from *Berkemer*'s application to ordinary traffic stops; specifically, the motorist in *Meyer* could be found to have been placed in custody for purposes of *Miranda* safeguards because he was detained for over half an hour, and subjected to questioning while in the patrol car. Thus, we acknowledged *Meyer*'s relevance to the unusual traffic stop that involves prolonged detention. We expressly disapproved, however, the attempt to extrapolate from this sensitivity to uncommon detention circumstances any general proposition that custody exists whenever motorists think that their freedom of action has been restricted, for such a rationale would eviscerate *Berkemer* altogether. See *Berkemer, supra*, at 436–437.

[3] We thus do not reach the issue whether recitation of the alphabet in response to custodial questioning is testimonial and hence inadmissible under *Miranda* v. *Arizona*, 384 U. S. 436 (1966).

the question decided. *Rhodes* v. *Stewart, ante,* p. 1 (MAR-SHALL, J., dissenting); *Buchanan* v. *Stanships, Inc.,* 485 U. S. 265, 269 (1988) (MARSHALL, J., dissenting); *Commissioner* v. *McCoy,* 484 U. S. 3, 7 (1987) (MARSHALL, J., dissenting). I therefore dissent from the Court's decision today to reverse summarily the decision below.

JUSTICE STEVENS, with whom JUSTICE MARSHALL joins, dissenting.

The Court explains why it reverses the decision of the Superior Court of Pennsylvania in this drunken driving case, but it does not explain why it granted certiorari.

In *Berkemer* v. *McCarty,* 468 U. S. 420, 440–442 (1984), the Court concluded that *Miranda* warnings are not required during a traffic stop unless the citizen is taken into custody; that there is no bright-line rule for determining when detentions short of formal arrest constitute custody; and that "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation," 468 U. S., at 442. The rule applied in Pennsylvania is strikingly similar to this Court's statement in *Berkemer.* As the Pennsylvania Superior Court explained in this case:

> "In Pennsylvania, 'custodial interrogation does not require that police make a formal arrest, nor that the police intend to make an arrest. . . . Rather, the test of custodial interrogation is whether the individual being interrogated reasonably believes his freedom of action is being restricted.' *Commonwealth* v. *Meyer,* 488 Pa. 297, 307, 412 A. 2d 517, 521 (1980) (quoting *Commonwealth* v. *Brown,* 473 Pa. 562, 570, 375 A. 2d 1260, 1264 (1977). . . .
>
> "In *Commonwealth* v. *Meyer,* the Pennsylvania Supreme Court ruled that the driver of a car involved in an accident who was suspected of driving under the influence of alcohol and who was told by police to wait at the scene until additional police arrived was in custody for

purposes of *Miranda*. The *Meyer* court reasoned that because the defendant had a reasonable belief that his freedom of action had been restricted, statements elicited before he received his *Miranda* warnings should have been suppressed. 488 Pa. at 307, 412 A. 2d at 522." 365 Pa. Super. 106, 111–112, 528 A. 2d 1385, 1387 (1987).

In its *Berkemer* opinion, this Court cited the Pennsylvania Supreme Court's opinion in *Commonwealth* v. *Meyer*, 488 Pa. 297, 412 A. 2d 517 (1980), with approval. 468 U. S., at 441, n. 34. Thus, there appears to be no significant difference between the rule of law that is generally applied to traffic stops in Pennsylvania and the rule that this Court would approve in other States.

There is, however, a difference of opinion on the question whether the rule was correctly applied in this case. The Superior Court of Pennsylvania was divided on the issue. See 365 Pa. Super., at 117, 528 A. 2d, at 1390 (Rowley, J., concurring and dissenting). It was therefore quite appropriate for the prosecutor to seek review in the Supreme Court of Pennsylvania. That court summarily denied review without opinion. See 518 Pa. 635, 542 A. 2d 1365 (1988). That action was quite appropriate for the highest court of a large State like Pennsylvania because such a court is obviously much too busy to review every arguable misapplication of settled law in cases of this kind.

For reasons that are unclear to me, however, this Court seems to welcome the opportunity to perform an error-correcting function in cases that do not merit the attention of the highest court of a sovereign State. See, *e. g.*, *Florida* v. *Meyers*, 466 U. S. 380 (1984) *(per curiam); Illinois* v. *Batchelder*, 463 U. S. 1112 (1983) *(per curiam)*. Although there are cases in which "there are special and important reasons" for correcting an error that is committed by another court, see this Court's Rule 17.1, this surely is not such a case. The Court does not suggest that this case involves an

important and unsettled question of federal law or that there is confusion among the state and federal courts concerning what legal rules govern the application of *Miranda* to ordinary traffic stops. Rather, the Court simply holds that the Superior Court of Pennsylvania misapplied our decision in *Berkemer* to "[t]he facts in this record." *Ante*, at 11. In my judgment this Court's scarce resources would be far better spent addressing cases that are of some general importance "beyond the facts and parties involved," *Boag* v. *MacDougall*, 454 U. S. 364, 368 (1982) (REHNQUIST, J., dissenting), than in our acting as "self-appointed . . . supervisors of the administration of justice in the state judicial systems," *Florida* v. *Meyers*, 466 U. S., at 385 (STEVENS, J., dissenting).

Accordingly, because I would not disturb the decision of the Supreme Court of Pennsylvania—which, incidentally, is the court to which the petitioner asks us to direct the writ of certiorari—I respectfully dissent.