553 A.2d 998

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Philip N. TOANONE, Appellee.**

Superior Court of Pennsylvania.

Argued April 7, 1988.

Filed Jan. 19, 1989.

Joseph J. Mittleman, Assistant District Attorney, Media, for Com., appellant.

Edward J. Zetusky, Jr., Chester, for appellee.

Before WIEAND, BECK and MELINSON, JJ.

BECK, Judge:

This is an appeal by the Commonwealth from an order suppressing evidence relating to the charge that Philip N. Toanone operated a motor vehicle while under the influence of alcohol. We reverse.

The relevant facts are not in dispute. On January 8, 1987, at approximately 8:30 P.M., Officer Donahue of the Springfield Township Police was waiting in his police car at a traffic light on Baltimore Pike when he was approached by Mr. Gerald Plasmeier. Mr. Plasmeier stated that the car he was driving had just been struck by a white Lincoln Continental which was also waiting at the traffic light. Shortly afterward, Officer Donahue received a radio report of a hit and run accident involving a car with a description which matched the white Lincoln Continental. After following the Lincoln Continental for several blocks, Donahue stopped the vehicle and asked the driver, defendant Philip Toanone, for identification. While Donahue was examining the defendant's driver's license, owner's card, and insurance information, two other police cars arrived on the scene, one

of which was driven by Officer Thomas J. Hannigan. Hannigan had previously received a report of an incident in the area involving a drunk driver, but he did not know whether this incident was connected with the hit and run accident that Donahue was investigating.

After conferring with Officer Donahue, Officer Hannigan asked the defendant to step out of his vehicle and answer some questions. When the defendant left the car, Hannigan noticed that the defendant was unsteady on his feet and smelled of alcohol. Hannigan then administered field sobriety tests. He initially asked the defendant about his educational background, and the defendant said that he had graduated from high school. Hannigan then instructed the defendant to recite the alphabet; the defendant tried to comply but could not remember past the letter "W". Hannigan next asked the defendant to stand on one leg and count to ten; the defendant was unable to maintain his balance. At the conclusion of the sobriety tests, Hannigan arrested the defendant and transported him to the police station where he first received *Miranda* warnings.

Defendant was charged with driving while under the influence of alcohol, failing to give information and render aid following an accident, and other violations of the Motor Vehicle Code. *See* 75 Pa.Cons.Stat.Ann. §§ 3731, 3744 (Purdon 1977 & Supp.1988). He filed a motion to suppress, and on July 3, 1987, Officers Donahue and Hannigan appeared and testified at a suppression hearing before the Court of Common Pleas of Delaware County. The court concluded that the police had violated defendant's constitutional rights, and issued an order prohibiting the use at trial of the evidence obtained by the police. The Commonwealth filed a timely appeal to this court. Since the Commonwealth has certified in good faith that the suppression order if given effect would substantially handicap or terminate its prosecution of the defendant, we have jurisdiction to entertain this appeal. *See Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985); *Commonwealth v. Slovikosky,* 374 Pa.Super. 441, 543 A.2d 553 (1988).

Our standard of appellate review is well established.

In reviewing the findings of a suppression court where the Commonwealth is appealing, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. *Commonwealth v. Hamlin*, 503 Pa. 210, 469 A.2d 137 (1983) (plurality opinion). While we are bound by the lower court's findings of fact if supported by the record, we are not bound by the court's legal conclusions which are drawn from the facts of the case. *Commonwealth v. Cortez*, 507 Pa. 529, 491 A.2d 111 (1985).

*Commonwealth v. Lagana*, 517 Pa. 371, 375–76, 537 A.2d 1351, 1353–54 (1988). *See also Commonwealth v. Robinson*, 518 Pa. 156, 541 A.2d 1387 (1988); *Commonwealth v. Stine*, 372 Pa.Super. 312, 539 A.2d 454 (1988).

We do not agree with the legal conclusions of the trial court. The court suppressed evidence of the sobriety tests on alternative grounds. We shall address both of the arguments advanced in favor of suppression.

## I.

The suppression court first attempted to support its order by stating: "Neither investigating Officer had any legal Probable Cause to proceed beyond an accident investigation to a driving under the influence investigation." The court apparently reasoned that since the officers did not have probable cause to believe that the defendant was intoxicated at the time they stopped his vehicle, they could not direct the defendant to leave his car and perform sobriety tests. In *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), however, the United States Supreme Court held that "once a motor vehicle has been lawfully [detained] for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Id.* at 111 n. 6, 98 S.Ct. at 333 n. 6. Thus, once Officer Donahue had lawfully stopped the defendant's car because of the defendant's

involvement in a hit and run accident, Officer Hannigan was justified in ordering the defendant to stand outside his vehicle.

When the defendant left the car, his unsteady walk and the smell of alcohol on his breath alerted the police that defendant may have committed the misdemeanor of driving while intoxicated.  Under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police may restrict an individual's freedom of movement for a limited period of time in order to conduct an investigation when specific and articulable facts give rise to a reasonable suspicion of criminal activity.  *See Commonwealth v. Elliott,* 376 Pa. Super. 536, 545, 546 A.2d 654, 658 (1988).  Since Officer Hannigan had good reason to believe that defendant may have been drunk, he was justified in asking the defendant to perform the sobriety tests.  Furthermore, defendant's poor performance of the tests provided probable cause for a lawful arrest for driving under the influence of alcohol.

The defendant attempts to distinguish *Pennsylvania v. Mimms, supra,* by arguing that a policeman may only order a driver out of his car when the policeman has a specific reason to believe that the individual driver is armed and dangerous.  We recently rejected a similar claim in *Commonwealth v. Elliott, supra.*  The *Mimms* Court emphasized the overall danger which the police face when approaching automobiles during the course of their duties, and balanced this danger against the limited intrusion on privacy which results from asking a person who has been lawfully stopped to stand outside his car for a brief period.  *See Pennsylvania v. Mimms,* 434 U.S. at 110–111, 98 S.Ct. at 333.  In the view of a majority of United States Supreme Court justices, an individualized inquiry into the severity of the threat posed by a each particular driver is not required.  *See New York v. Class,* 475 U.S. 106, 115, 106 S.Ct. 960, 966, 89 L.Ed.2d 81 (1986).

Defendant also emphasizes in his appellate brief that *Pennsylvania v. Mimms* was decided under the fourth amendment to the federal constitution.  Article I, section 8

342

of the Pennsylvania Constitution provides an independent basis for protecting the citizens of this Commonwealth against unreasonable searches and seizures. *See, e.g., Commonwealth v. Blystone*, 519 Pa. 450, 463, 549 A.2d 81, 87 (1988). In *Commonwealth v. Elliott*, however, we recently reversed a suppression order which was inconsistent with *Pennsylvania v. Mimms* without determining whether the state constitution guarantees additional rights for Pennsylvania motorists. The *Elliott* opinion states:

> We note that the state, under its own constitution, "has the power to impose standards on searches and seizures higher than those required by the Federal Constitution." *Commonwealth v. DeJohn*, 486 Pa. 32, 43, 403 A.2d 1283, 1288 (1979). However, where it is not clear from the face of the trial court's opinion whether it is based on the state or federal constitutional provision, we will assume that the trial court decided the case the way it did under the mandate of federal law. *Accord Michigan v. Long*, 463 U.S. 1032, 1042, 103 S.Ct. 3469, 3477, 77 L.Ed.2d 1201 (1983). In the instant case there is nothing in the trial court's opinion which indicates anything other than reliance on federal constitutional principles.

376 Pa.Super. at 545 n. 5, 546 A.2d at 658 n. 5.

■ Here, as in *Elliott*, we shall assume that the trial court based the suppression motion solely on federal grounds since the court did not cite to either the federal or state constitutions in its conclusions of law. This does not mean that we do not have the power to decide the defendant's state constitutional claim, and it is conceivable that defendant's state constitutional challenge might prevail. An appellate court may affirm a trial court order on a basis other than that relied upon by the trial court. *Gerace v. Holmes Protection of Philadelphia*, 357 Pa.Super. 467, 471–72, 516 A.2d 354, 357 (1986). Therefore, this court could consider the state constitutional claim in order to determine if this claim provides an alternative basis for affirming the trial court's order.

■ Nevertheless, we believe that there is good reason to refrain from addressing the state constitutional question. Although the defendant cited the state constitution in passing in his suppression motion, the scope and applicability of article I, section 8 of the Pennsylvania Constitution was not argued by the parties in the court below and was not briefed by the Commonwealth on appeal. Moreover, since we deal here with the Commonwealth's appeal of a suppression motion, our ruling today may not finally dispose of the litigation between the parties. We are reluctant to decide an unsettled question of constitutional law on appeal from an order which may not terminate litigation, especially since we have not had the benefit of the trial court's insights on the question or of the arguments of both parties on the question. Therefore, we shall not reach the merits of the defendant's state constitutional claim at this juncture. *Cf. Mt. Lebanon v. County Board of Elections*, 470 Pa. 317, 368 A.2d 648 (1977) (court should not decide constitutional issue unless absolutely necessary). However, in the event that the defendant is successfully prosecuted and convicted, he may reassert this claim by specifically preserving in post-trial motions and on appeal the question of whether the doctrine of *Pennsylvania v. Mimms* is contrary to article I, section 8 of the Pennsylvania Constitution.

## II.

The suppression court's alternative ground for its order was that the police violated the defendant's right against self-incrimination by questioning the defendant and asking him to recite the alphabet without administering *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Testimonial evidence which the police obtained after wrongfully failing to give *Miranda* warnings must be suppressed. *See, e.g., Commonwealth v. Benson*, 280 Pa.Super. 20, 29, 421 A.2d 383, 387 (1980). However, *Miranda* warnings need be given only when a defendant is subjected to interrogation while in custody. *See Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. The suppression court found that under *Commonwealth v.*

*Bruder*, 365 Pa.Super. 106, 528 A.2d 1385 (1987), the defendant was in custody at the time when his vehicle was stopped by the side of the road. Although the court correctly applied the standard for custody developed in *Commonwealth v. Bruder*, the *Bruder* decision was recently overruled by the United States Supreme Court. *Pennsylvania v. Bruder*, —— U.S. ——, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988).

In *Bruder*, a patrolman stopped a car which passed through a red light and noticed that the driver seemed intoxicated. After asking the driver to recite the alphabet and walk in a straight line, the patrolman arrested the driver and read him *Miranda* warnings. The driver was convicted of operating a motor vehicle while under the influence of alcohol and he appealed his judgment of sentence. A divided panel of the Superior Court reversed.

The Superior Court majority in *Bruder* acknowledged that in *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the United States Supreme Court had previously ruled that the roadside questioning of a driver did not rise to the level of custodial interrogation. However, the majority reasoned that since *McCarty* did not set forth a bright line test for deciding when *Miranda* applies to traffic stops, this court is "afforded a measure of flexibility in deciding exactly when a suspect has been taken into custody." 365 Pa.Super. at 111, 528 A.2d at 1387. The majority also noted that in *Commonwealth v. Meyer*, 488 Pa. 297, 412 A.2d 517 (1980), the Pennsylvania Supreme Court had found that a defendant who was questioned by state troopers at the scene of a accident was in custody for purposes of *Miranda*. The majority then proceeded to find that appellant was in custody while performing the sobriety tests since "Bruder reasonably believed that his freedom of action had been restricted." 365 Pa.Super. at 112, 528 A.2d at 1388. Finally, the majority held that the recitation of the alphabet was communicative evidence which should have been preceded by *Miranda* warnings.

The Commonwealth sought to appeal the Superior Court decision to the Pennsylvania Supreme Court which denied allocatur. 518 Pa. 635, 542 A.2d 1365 (1988). The Commonwealth then sought review in the United States Supreme Court. That Court granted the Commonwealth's petition for certiorari and filed a per curium opinion on October 31, 1988 reversing the Superior Court.[1] The per curium opinion states:

In *Berkemer v. McCarty, supra,* which involves facts strikingly similar to those in this case, the Court concluded that the "noncoercive aspect of ordinary traffic stops prompts as to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda." Id.,* [468 U.S.] at 440 [104 S.Ct. at 3150]. The Court reasoned that although the stop was unquestionably a seizure within the meaning of the Fourth Amendment, such traffic stops typically are brief, unlike a prolonged station house interrogation. Second, the Court emphasized that traffic stops commonly occur in the "public view," in an atmosphere far "less 'police dominated' than that surrounding the kinds of interrogation at issue in *Miranda* itself." *Id.,* at 440, 104 S.Ct. [at 3150] (citing *California v. Beheler,* 463 U.S. 1121, 1125, 77 L.Ed.2d 1275, 103 S.Ct. 3517 [3520] (1983).) Accordingly, he was not entitled to a recitation of his constitutional rights prior to arrest, and his roadside responses to questioning were admissible.

The facts in this record, which Bruder does not contest, reveal the same noncoercive aspects as the *Berkemer* detention: "a single police officer ask[ing] respondent a modest number of questions and request[ing] him to perform a simple balancing test at a location visible to passing motorists." 468 U.S., at 442, 104 S.Ct. [at 3151]

1. The United States Supreme Court reversed on the ground that Bruder was not in custody. That Court did not review the Superior Court majority's additional holding that the recitation of the alphabet is testimonial in nature. *See Pennsylvania v. Bruder,* —— U.S. at —— n. 3, 109 S.Ct. at 207 n. 3, 102 L.Ed.2d at 177 n. 3 (reserving issue). We have no occasion to consider whether this additional holding should also be reexamined.

(footnote omitted). Accordingly, *Berkemer*'s rule, that ordinary traffic stops do not involve custody for purposes of *Miranda*, governs this case.

—— U.S. at —— – ——, 109 S.Ct. at 206–07, 102 L.Ed.2d at 176–77 (footnotes omitted).

The Court added the following commentary in a footnote:

Reliance on the Pennsylvania Supreme Court's decision [in] *Commonwealth v. Meyer*, 488 Pa. 297, 412 A.2d 517 (1980), to which we referred in *Berkemer*, see 468 U.S., at 441, and n. 34, 104 S.Ct. [at 3151, and n. 34] is inapposite. *Meyer* involved facts which we implied might properly remove its result from *Berkemer*'s application to ordinary traffic stops; specifically, the motorist in *Meyer* could be found to have been placed in custody for purposes of *Miranda* safeguards because he was detained for over one-half an hour, and subjected to questioning while in the patrol car. Thus, we acknowledged *Meyer*'s relevance to the unusual traffic stop that involves prolonged detention. We expressly disapproved, however, the attempt to extrapolate from this sensitivity to uncommon detention circumstances any general proposition that custody exists whenever motorists think that their freedom of action has been restricted, for such a rationale would eviscerate *Berkemer* altogether. See *Berkemer, supra*, 436–437, 104 S.Ct. [at 3148].

—— U.S. at —— – —— n. 2, 109 S.Ct. at 207 n. 2, 102 L.Ed. at 176–77 n. 2.

In summary, the United States Supreme Court has clarified that police need only give *Miranda* warnings while detaining a suspect by the side of a public highway when the suspect is actually placed under arrest or when the questioning of the suspect is so prolonged or coercive as to approximate the atmosphere of a station house interrogation. Thus, in the typical situation in which a motorist is temporarily ordered to remain by the side of his car, *Miranda* warnings are not essential.

This conclusion is also supported by the recent decision of the Pennsylvania Supreme Court in *Commonwealth v.*

*Gonzalez*, 519 Pa. 116, 546 A.2d 26 (1988). In *Gonzalez*, the appellant was questioned by police without benefit of *Miranda* warnings after he was involved in a serious car accident. The plurality found that appellant's statements were admissible as evidence since appellant was not in custody.[2] The *Gonzalez* Court cited with approval the following passage from *Commonwealth v. Meyer:*

[T]his jurisdiction's test of 'custodial interrogation' examines more than actual deprivation of freedom. Pennsylvania's test for custodial interrogation is whether the suspect is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by said action.

*Gonzalez*, 519 Pa. at 124, 546 A.2d at 26 (citing *Meyer*, 488 Pa. at 306, 412 A.2d at 521).

The plurality, however, proceeded to apply the *Meyer* test for custody in a manner consistent with the United States Supreme Court's approach in *Berkemer v. McCarty* and *Pennsylvania v. Bruder*. The plurality found that although appellant was under a statutory duty to remain at the scene of the accident and identify himself, *see* 75 Pa. Cons.Stat.Ann § 3744, he was not entitled to *Miranda* warnings.

When the police officers approached the appellant at the accident scene and asked him if he was hurt and what happened, appellant was not in custody, nor could he have reasonably believed he was in custody for purposes of *Miranda*. At that time, the appellant was not under arrest and he has not shown that he was subjected to restraints comparable to those associated with an arrest. The appellant was asked a minimal number of questions at the scene of the accident on a public street. Those

2. Justice Larsen authored an opinion announcing the judgment of the court which was joined by Justice Flaherty and Justice Zappala. Chief Justice Nix concurred in the result. Justice McDermott and Justice Papadakos dissented on a ground unrelated to the *Miranda* issue. Justice Stout did not participate in consideration or decision of the case.

questions cannot be characterized as "custodial interrogation." *See Berkemer v. McCarty,* [*supra* ].
519 Pa. at 124, 546 A.2d at 29–30. *Cf. Commonwealth v. Ellis,* 379 Pa.Super. 337, 351–357, 549 A.2d 1323, 1330–32 (1988) (applying *Berkemer* standard for custody).

■ In light of *Commonwealth v. Gonzalez, supra, Pennsylvania v. Bruder, supra,* and *Berkemer v. McCarty, supra,* we conclude that in the case sub judice, the police did not err by omitting *Miranda* warnings. The record does not indicate that the defendant was interrogated for an unreasonably long period of time, or forced to enter a police patrol car, or subjected to any form of undue coercion. The defendant was asked a few question and directed to perform a few simple sobriety tests while standing at the side of his vehicle in a public area. Therefore, *Miranda* warnings were not required.

ORDER REVERSED. Jurisdiction is relinquished.

WIEAND, J., concurs in the result.