### UNITED STATES

v.

**Staff Sergeant Scott M. McCARTHY, FR374–68–7716, United States Air Force.**

**ACM 29154.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 19 Dec. 1990.

Decided 19 May 1993.

Appellate Counsel for the Appellant: Major Richard W. Aldrich (argued), Colonel Jeffrey R. Owens, and Mr. Thomas A. Brocato, Esq.

Appellate Counsel for the United States: Captain Carlos L. McDade (argued), Lieutenant Colonel Brenda J. Hollis, and Major Ann M. Mittermeyer.

Before LEONARD, McLAUTHLIN and JAMES, Appellate Military Judges.

## OPINION OF THE COURT

McLAUTHLIN, Senior Judge:

Were the appellant's initial admissions to authorities the product of an improper custodial interrogation? Did investigators later interview him without honoring his request for counsel? We answer "no" to both questions and, finding no merit in the other errors asserted, affirm the findings and the sentence.

After denial of the motion to suppress his confessions and the evidence derived from those confessions, Staff Sergeant McCarthy entered conditional pleas of guilty to using and possessing cocaine.[1] His approved sentence consists of a bad-conduct discharge, 9 months confinement, forfeiture of $200 pay per month for 9 months, and reduction to E–1.

## FACTS

According to the military judge's findings, which we adopt as our own, Officer Gleason of the Alexandria, Louisiana, Police Department responded to a disturbance on Fenner Street in Alexandria at about 1:00 a.m. on 1 September 1990. This was a predominantly black neighborhood, considered by the Alexandria police to be a high narcotics crime area. After departing the site of the disturbance in his patrol car,

---

1. *See* R.C.M. 910(a)(2); *United States v. Forbes,* 19 M.J. 953 (A.F.C.M.R.1985).

Officer Gleason saw the appellant, a white man, walking along the road in the opposite direction. The officer's first impression was the appellant was lost or having car trouble. Without activating his siren or flashing lights, Officer Gleason turned his car around, pulled over, got out, and called to the appellant. He said he saw the appellant look back at him, take something out of his pocket, and toss it to the ground.

Officer Gleason walked up to the appellant, requested some identification, and asked what he was doing. The appellant said he was just out for a walk. When Officer Gleason asked where he lived, the appellant gave an address several miles away. Officer Gleason then asked the appellant what he threw on the ground. Appellant denied throwing anything. Officer Gleason noticed the appellant was acting nervous and that his eyes were unnaturally wide and bloodshot. Since he did not detect an odor of alcohol, Officer Gleason believed the appellant might be under the influence of narcotics.

Officer Gleason's back-up, Officer Beebe, arrived, and Officer Gleason told him the appellant had thrown something to the ground. Using a flashlight, Officer Beebe began searching the ground nearby. As Officer Beebe started his search, the appellant began saying he "didn't need this" and talking about his family and his career. When Officer Beebe found what appeared to be a small rock of cocaine, Officer Gleason arrested the appellant for possession of cocaine and handcuffed him. Officer Gleason did not inform the appellant of his rights or ask any questions as he made the arrest. Nevertheless, it was then that the appellant first admitted the rock of cocaine Officer Beebe found was his.[2]

Officer Gleason said he advised the appellant of his rights against self-incrimination when he placed the appellant in the patrol car. Then, he drove the appellant to the Rapides Parish Sheriff's Detention Center and informed the appellant of his rights again, using a pre-printed form the appellant signed.[3]

The appellant was released to agents from the Air Force Office of Special Investigations (OSI) that afternoon. The agents took him to their office at England Air Force Base and again warned him of his rights. The appellant indicated he understood those rights, did not want legal counsel, and was willing to talk. He then confessed to using cocaine and to possessing the rock cocaine found next to him the night before.

## ADMISSIBILITY OF APPELLANT'S CONFESSIONS

At trial and in oral argument before us, appellant's counsel contend the appellant was responding to a custodial interrogation when he first confessed to possessing cocaine. They assert he also requested counsel before making his admissions to the OSI agents. On both issues, the military judge found to the contrary, and so do we.

■ Addressing the right to counsel question first, we find the appellant made no request for counsel while in civilian custody. Therefore, he was not denied his right to counsel when OSI agents later obtained his waiver of his rights and interviewed him. *See Minnick v. Mississippi,* 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990).

Appellant's self-incrimination complaint relates to his initial admission to Officer Gleason that the rock cocaine found on the

---

**2.** Testifying on the motion, the appellant said he admitted the cocaine was his only after Officer Gleason called him a liar and "threatened" him. The appellant also said Officer Gleason had him turn around and keep his hands on the hood of a car parked nearby. The judge, however, accepted Officer Gleason's testimony that none of these things occurred.

**3.** The appellant said he was *first* advised of his rights at the jail. He testified that "after the[se] rights were completed ... I was like, 'Well, I suppose I should call a lawyer'". Then, the appellant said Officer Gleason informed him, "No lawyer is going to talk to you at this time of the morning." Officer Gleason told the judge the appellant "never indicated to us that he wanted a lawyer". Officer Gleason also denied ever telling the appellant no lawyer would talk to him at that hour. Again, the military judge accepted the policeman's version of the facts.

ground was his. He asserts this confession was improperly obtained during a custodial interrogation. Since civilian authorities were involved exclusively at that point, we employ the principles of law generally recognized in United States district courts. Mil.R.Evid. 305(h)(1).

*Miranda* warnings must be given before a suspect is subjected to a custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). Whether one is in custody is decided objectively: How would a reasonable person in the suspect's position understand the situation? *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984). If this objective test reveals a "restraint on [the suspect's] freedom of movement of the degree associated with a formal arrest," the requirements of *Miranda* apply. *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983). *Miranda* is designed to preserve the constitutional privilege against self-incrimination "during incommunicado interrogation of individuals in a police-dominated atmosphere." *Illinois v. Perkins,* 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990). Elements of concern are coercion or compulsion, particularly in private, by government officials who appear to control the suspect's fate. *Id.* at 296–97, 110 S.Ct. at 2397.

■ These overbearing elements are not present in this record. Officer Gleason never used his vehicle's siren or flashing lights when he stopped to find out what the appellant was doing in the neighborhood. His roadside questioning of the appellant occurred in public, in full view of passing motorists and area residents, and lasted no more than 5 minutes. The Supreme Court likened a similar scenario[4] to a *"Terry* stop"[5] and explained, "The comparatively nonthreatening character of detentions of

this sort explains the absence of any suggestion in our opinions that *Terry* stops are subject to the dictates of *Miranda." Berkemer v. McCarty,* 468 U.S. at 440, 104 S.Ct. at 3150; *see also Pennsylvania v. Bruder,* 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988).

Officer Gleason's unexpressed view that the appellant "wasn't going anywhere" did not make the discussion custodial. "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time...." *Berkemer v. McCarty,* 468 U.S. at 441, 104 S.Ct. at 3151. The fact that Officer Gleason thought there was a "possibility" the appellant would make an incriminating statement when asked what he threw down is not enough to require rights advice. *Arizona v. Mauro,* 481 U.S. 520, 528–29, 107 S.Ct. 1931, 1936, 95 L.Ed.2d 458 (1987).

We find nothing amounting to the functional equivalent of a formal arrest in the roadside exchange between the appellant and Officer Gleason, and nothing requiring prefatory warnings. Additionally, we note that appellant's admission to possessing cocaine came as he was being placed in custody, *after* Officer Gleason had stopped asking questions altogether. Spontaneous statements made, even after an arrest, are not the product of an interrogation and are not barred because of inadequate or missing *Miranda* warnings. *Miranda v. Arizona,* 384 U.S. at 478, 86 S.Ct. at 1630. We conclude that appellant's admissions to Officer Gleason were not the result of a custodial interrogation. Therefore, they were properly admitted.

### TRIAL COUNSEL'S SENTENCING ARGUMENT

■ The appellant next suggests trial counsel's sentencing argument was unduly inflammatory and injected facts not in evi-

---

4. In *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, McCarty was pulled over by a police officer because his car was weaving. The officer asked McCarty to step out of his car, and concluded (without informing McCarty) that he would charge him with a traffic offense. The officer administered a field sobriety test which McCarty failed. With no rights advice, the offi-

cer then asked McCarty if he had used intoxicants. McCarty admitted he had consumed two beers and smoked some marijuana. The officer arrested McCarty and took him to jail.

5. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

dence. Trial counsel began his argument noting,

TC: [T]oday, American men and women confront a ruthless adversary, an adversary who will steal, who will kill, who will maim and cripple with chemical poisons. Your honor, I'm talking about America's confrontation with Saddam Hussein, but I could easily be arguing about ...

DC: Objection, improper argument.

MJ: Overruled, go ahead.

TC: About America's war on drugs. Your honor, that is the war on drugs that we have all heard about, know about.

Appellant asserts this association with "an individual who has been likened to Hitler," coupled with the prosecutor's subsequent comments comparing drug use with surrender in battle and characterizing the appellant as a "collaborator," amounted to improper inflammatory argument. Appellate defense counsel also contend the trial counsel incorrectly argued facts not in evidence by referencing the "confrontation with Saddam Hussein" and "America's war on drugs," and by remarking later that the appellant had his driver's license revoked in Europe for driving while intoxicated.[6]

 Trial counsel's argument cannot intentionally incite the passions of the sentencing authority. *See United States v. Waldrup*, 30 M.J. 1126 (N.M.C.M.R.1989), *pet. denied*, 31 M.J. 383 (C.M.A.1990). The argument must also remain limited "to evidence in the record and to such fair inferences as may be drawn therefrom." *United States v. Nelson*, 1 M.J. 235, 239–40 (C.M.A.1975); *see also United States v. White*, 36 M.J. 306 (C.M.A.1993).

Counsel's argument, here, came unnecessarily close to the lines separating proper from improper argument, but the only de-

fense objection lodged against the substance of that argument came as it began, with the reference to Saddam Hussein. Arguably, the failure to object again waived appellate review of any issues that might have occurred in the remainder of the argument. R.C.M. 1001(g).

In any event, we are of the opinion that trial counsel's argument before an experienced military judge did not substantially prejudice the appellant. Article 59(a), UCMJ, 10 U.S.C. § 859(a). A military judge sitting alone is presumed to exercise proper discretion and to distinguish proper from improper remarks. *United States v. Eck*, 10 M.J. 501 (A.F.C.M.R.1980); *United States v. Adams*, 1 M.J. 877 (A.F.C.M.R. 1976); *United States v. Moore*, 1 M.J. 856 (A.F.C.M.R.1976). As an Air Force noncommissioned officer, the appellant was convicted of divers uses and a single possession of cocaine. His record included two nonjudicial punishments for drunk driving and a reprimand for an unexcused absence. Facing total forfeitures and a maximum possible confinement of 10 years, he received 9 months confinement and forfeitures of $200 per month for 9 months. Under the totality of circumstances, we are satisfied the appellant suffered no prejudice from any error in the trial counsel's argument.

## "PROCEDURAL IRREGULARITIES"

Just before announcing the sentence, the judge disclosed,

During my deliberations, I discovered that an airman performance report covering the period of 1 July 1987 through 20 June 1989, 88, I'm sorry, had been inadvertently omitted from Prosecution Exhibit 3. It was provided to me and I considered it. It will be included with

---

6. Trial counsel argued, "Look at his record, your honor. Look at it and you'll find a DUI [driving under the influence] in April of 1987. *His driver's license in Europe was revoked.* But, he only received a suspended reduction in rank." (Emphasis added.) Prosecution Exhibit 4 contains a record indicating appellant was given a suspended reduction in rank, a pay forfeiture, and extra duty as nonjudicial punish-

ment for drunk driving in April of 1987. Nothing is mentioned in that record about revoking appellant's driver's license. A subsequent record of nonjudicial punishment, also included in Prosecution Exhibit 4, cites appellant again for drunk driving and for driving without a valid European driver's license, without explaining how the license was lost.

the other performance reports as part of Prosecution Exhibit 3.

Appellate defense counsel suggest that if the judge learned of the missing performance report in an *ex parte* conversation with the prosecutor, the appellant was denied his "rights to due process, to confront the witnesses against him, and to be represented by counsel." If, instead, the judge determined the omission was inadvertent during an R.C.M. 802 session, counsel argue the concurrence from both parties and a transcript of the session admitting the evidence should have been included in the record. Omitting those proceedings from the record would render the record incomplete. Finally, appellate counsel question the authenticity of the "inadvertently omitted" report, noting that it is the only performance report in Prosecution Exhibit 3 missing the stamp and signature of the records custodian. Appellant maintains that any of these possibilities warrant sentence relief. We do not agree.

■ While we find the means used to add this performance report to the record peculiar, we perceive no prejudice. Besides the report in question, there are 17 other performance appraisals and two evaluation letters included in Prosecution Exhibit 3. This report appears regular on its face, with start up and close out dates corresponding to those in the reports surrounding it in time. The indorser is the same person who indorsed the appellant's evaluation the year before. Appellant observes that this document contains somewhat lower ratings than his other "very exemplary" appraisals. We suggest the reason for that assessment was already before the judge—it was during this reporting period that the appellant received his second nonjudicial punishment action for drunk driving. And, despite showing slightly deflated evaluations in some areas, the document still describes the appellant's overall excellent duty performance and significant contributions to the wing.

The addition of the missing performance report allowed the military judge to review all the pertinent evidence of the appellant's performance. R.C.M. 1001(a)(1)(A)(ii). We do not condone the means used to include it in this record, but we find no resulting prejudice.

Therefore, having examined the record of trial, the assignment of errors, and the government's reply thereto, we conclude that the findings and sentence are correct in law and fact, the sentence is appropriate, and no error prejudicial to the appellant's substantial rights was committed. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

Senior Judge LEONARD and Judge JAMES concur.