THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DANIEL MEDINA and TITO RIVERA, Respondents.

Second Department, March 18, 1985

**APPEARANCES OF COUNSEL**

*John J. Santucci, District Attorney* (*John Castellano* of counsel), for appellant.

*William E. Hellerstein* (*Murray E. Singer* of counsel), for Daniel Medina, respondent.

*Dennis T. Bennett* for Tito Rivera, respondent.

**OPINION OF THE COURT**

LAWRENCE, J.

The question presented on this appeal is whether the defendants' constitutional rights to be free from unreasonable searches and seizures (NY Const, art I, § 12; US Const, 4th Amend) were violated, thereby requiring suppression of physical evidence seized incident to their arrests as well as their

postarrest statements. Criminal Term concluded that the defendants were unlawfully seized and granted suppression. We respectfully disagree and, accordingly, reverse.

At approximately 4:15 P.M. on July 30, 1982, Officer Serra and his partner were patrolling Cooper Avenue in Queens County. The officers were dressed in plain clothes and were driving an unmarked patrol car. As the officers drove down the street, Serra observed two males walking up and down the sidewalk and glancing over a row of residential homes located across the street. Serra kept the two men, one of whom was defendant Rivera, under surveillance for approximately 15 minutes as they continued to pace up and down the street. Thereafter, Rivera and his companion proceeded to the corner of Cooper and Cypress Avenues where they were joined by two other males. One of these men, identified as defendant Medina, was carrying a blue suitcase; the other male was carrying a large object with a green cloth draped over it. A few minutes later, the four men started to walk down Cypress Avenue.

Officer Serra and his partner followed the men, pulled over to the curb a short distance in front of them, and exited the vehicle. The officers, with their shields in view, approached the defendants and the two other males, and identified themselves as police officers. Medina and his companion immediately dropped the articles which they had been carrying and all four men fled the scene. Officer Serra pursued and apprehended Rivera approximately one block from the scene. Medina was apprehended by a group of civilians who heard Officer Serra's call for assistance. Both defendants were arrested and placed in the patrol car. At that time, the officers inspected the articles which had been dropped at the scene and discovered a television set, a stereo component and assorted jewelry.

Following the arrests, the officers drove back with the defendants to the area of Cooper Avenue. After talking with several people on the street, the officers learned that there had been a burglary at 57-51 Cooper Avenue and that the perpetrators had gained access to the premises by forcing open a side window. At that point, Rivera and Medina were searched and the officers found assorted jewelry on Medina. The owners of the burglarized premises were eventually contacted and they identified the property seized by the officers.

At approximately 5:30 P.M., Rivera and Medina, who had been brought to the police precinct, were separately advised of their *Miranda* rights (*see, Miranda v Arizona,* 384 US 436). Medina agreed to speak to the officers without the presence of an

attorney, and, when questioned about the Cooper Avenue burglary, he explained that he had gained access to the premises through a side window and had taken the property. Rivera also waived his *Miranda* rights and, in response to the officers' inquiry, explained that he was acting as a "lookout" during the burglary.

It is well established that the justifiable scope of a police officer's conduct in any particular situation is defined by the factual circumstances known to the officer at that time (*People v De Bour,* 40 NY2d 210). For example, the minimal intrusion which occurs when an officer approaches an individual for the purpose of requesting information is permissible "when there is some objective credible reason for that interference not necessarily indicative of criminality" (*People v De Bour, supra,* p 223). If however, an officer harbors a founded suspicion that criminal activity is afoot, the officer, in exercising his common-law right to inquire, may temporarily detain an individual to the extent necessary to obtain explanatory information (*People v Carrasquillo,* 54 NY2d 248, 252-253; *People v Howard,* 50 NY2d 583, 589-590, *cert denied* 449 US 1023; *People v De Bour, supra,* p 223). However, the common-law right of inquiry does not permit an officer to detain an individual against his will (*People v Carrasquillo, supra; People v Howard, supra*). The forcible detention and frisk of an individual will only be justified if the officer has reasonable suspicion to believe that the particular individual is committing or is about to commit a crime (*Terry v Ohio,* 392 US 1; *People v De Bour, supra; People v Cantor,* 36 NY2d 106). And finally, an officer may arrest and take into custody any individual when he has probable cause to believe that person has in fact committed a crime (CPL 140.10; *People v Cantor, supra; People v De Bour, supra*).

In the case at bar, it can hardly be doubted that the police officers, in exercising their common-law right of inquiry, were justified in approaching the defendants and their companions in an effort to obtain explanatory information (*People v Carrasquillo, supra*). Such an inquiry was justified in view of (1) the suspicious behavior of Rivera and his companion in pacing up and down the sidewalk and glancing over at the row of houses located across the street; and (2) the fact that Rivera and his companion were later joined by Medina and a fourth male who were carrying a suitcase and a large green object with a cloth draped over it (*see, People v Williamson,* 107 AD2d 727). Moreover, we reject the defendants' claim that they were "seized" within the meaning of the Fourth Amendment. The officers, upon exiting their vehicle, merely approached the four men. There

was no display of weapons, nor did the officers act in a threatening or abusive manner (*People v Carrasquillo, supra,* pp 252-253). Under these circumstances no " 'reasonable person would have believed that he was not free to leave' " and accordingly, there was no seizure within the meaning of the Fourth Amendment (*see, Florida v Royer,* 460 US 491, 502).

In this vein, we note that the case at bar is distinguishable from the recent Court of Appeals case of *People v Johnson* (64 NY2d 617) on a legal as well as factual basis. In *People v Johnson,* the defendant, a known burglar, was observed in a park located in an area which had experienced a recent rash of burglaries. The defendant was walking around "looking at houses" (*People v Johnson, supra,* p 618). An officer approached the defendant and asked for identification which the defendant produced. At the same time, the defendant, without any prompting by the officer, also produced nine envelopes which he allegedly found in a nearby alleyway. The envelopes contained stolen hockey tickets. In view of these facts, the Court of Appeals held that the "stop" (p 619), which was based on no more than that the suspect had previously been arrested for burglary and that there had been burglaries in the area, was premature and illegal. Accordingly, the defendant's motion to suppress the fruits of the illegal stop was granted. In his dissenting opinion, Judge Jasen concluded that the officer's conduct in approaching the defendant for the purpose of a brief limited inquiry was justified and since there was no seizure, the defendant's constitutional rights were not violated. In response to Judge Jasen's dissent, the majority in *People v Johnson* (*supra,* p 619, n 2) noted: "The theory of the dissent that there was but a brief limited inquiry and that the Appellate Division correctly so held (at p 620, n 2) is incorrect as a matter of law. The People relied on no such theory at the suppression hearing (and even in this court argue only that the stop was justified by reasonable suspicion), and the Appellate Division could not uphold the action of the police on a factual theory not argued by the People below (*People v Dodt,* 61 NY2d 408, 416; *People v Knapp,* 52 NY2d 689, 699 [Jasen, J., concurring]). Nor is the facile suggestion of 'a diversity of phraseology' (at p 620, n 2) borne out by the record. The officers repeatedly testified about 'stopping' and 'intercepting' defendant, the matter was argued before the hearing Judge in terms of CPL 140.50, and the Judge found that pursuant to that section Officer Johnson 'was in possession of reasonable suspicion that the Defendant * * * had committed or was about to commit a crime'. The People having made no argument other than seizure before the suppression court, there

was no reason for defendant to present evidence on any other theory (see *People v Tutt,* 38 NY2d 1011, 1013), and any ambiguity in the record must be resolved in favor of defendant".

Unlike *People v Johnson (supra)* the People in this case did rely at the suppression hearing on the theory of common-law inquiry to justify the officers' initial encounter with the defendants. Accordingly, the case at bar is distinguishable from *People v Johnson (supra)* on this basis.

In addition, significant factual distinctions exist between these two cases. In *People v Johnson (supra)* the only information available to the officer prior to his stop of the defendant was that there had been a recent rash of burglaries in the immediate area and that the defendant was a known burglar. These facts alone, of course, do not constitute a sufficient basis for reasonable suspicion to believe criminal activity was afoot. Moreover, "[i]t can hardly be regarded as unusual that [the] defendant was looking at houses, for there is little else to look at in a residential neighborhood, and there is no other testimony suggesting that his behavior was furtive or his movements unusual *or that he was carrying anything that might provide a basis for suspicion" (People v Johnson, supra,* p 619 [emphasis supplied]; *see also, People v McGriff,* 99 AD2d 818). In the case at bar, however, the facts are much more compelling. Rivera and his companion were observed for a period of 15 minutes pacing up and down the street as they surveyed the row of residential houses. The two men were then joined by Medina and a fourth male *who were carrying a suitcase and a large object with a green cloth draped over it.* Moreover, once the officers approached the suspects for the purpose of inquiry, and identified themselves as police officers, the suspects immediately dropped the rather substantial amount of property which they had been carrying and fled the scene. Clearly, at that point in time the officers' suspicions rose to the level of probable cause to arrest.

Interestingly, the facts of this case are strikingly similar to those presented in *People v Chestnut* (91 AD2d 981) and *People v Casado* (83 AD2d 385). In *Chestnut,* an officer was patrolling a subway station platform in the early morning hours when he observed two or three men descending the staircase from the street. The men were carrying several packages. As the officer approached the men, they dropped their packages and ran up the stairs to the street. At that point, the officer noticed that the packages contained large numbers of jeans, blouses and sweatshirts. The officer pursued the men and, realizing that he would be unable to catch them, radioed for assistance. The

defendants were eventually apprehended several blocks away. On these facts, this court concluded that the officer clearly had probable cause to believe that the defendants were involved in criminal activity and accordingly ruled that their subsequent seizure and arrest were proper. Similarly, in *People v Casado* (*supra*), an officer observed the defendant over a period of 15 minutes, enter four adjacent apartment buildings and examine the doorbells in each building. The defendant was carrying an airline flight bag which did not appear to be full. When the defendant emerged from the fourth building, the officer noticed that the flight bag was " 'much larger than it was before' and 'something appeared to be * * * in it' " (*People v Casado, supra,* p 386). The officer approached the defendant and when he identified himself as a police officer, the defendant said, " 'Oh God' " (p 386), threw the flight bag at the officer and fled the scene. In that case, the Appellate Division, First Department, determined that the officer had probable cause to arrest the defendant and accordingly denied the defendant's suppression motion (*see also, People v Reyes,* 91 AD2d 935).

On this point, it is significant to note that the case of *People v Howard* (50 NY2d 583, *cert denied* 449 US 1023, *supra*) does not require a different result. As Presiding Justice Mollen stated in his recent opinion in *People v Chapman* (103 AD2d 494, 497), "[i]n *Howard,* the Court of Appeals held only that, *in the absence of indications of criminal activity,* a person's flight from police, standing alone, is insufficient to establish probable cause. The court reaffirmed, however, that where there are indications of criminal activity, flight from police would be 'an important factor in determining probable cause' (*People v Howard, supra,* p 592)". Concededly, in the case at bar, the defendants' flight from the scene, in and of itself, did not provide the officers with probable cause to believe that criminal activity was afoot. However, when the defendants' flight is coupled with (1) their immediate disposal of the suitcase and the large and obviously heavy object which was later discovered to be a television set; and (2) the previous suspicious behavior exhibited by defendant Rivera and his companion, it is clear that probable cause existed for the defendants' arrests.

Even assuming that probable cause did not exist, suppression of the physical evidence seized incident to the defendants' arrests and their subsequent statements to the police would not be warranted. In the first instance, it is obvious that the defendants abandoned the suitcase and the large green object prior to their arrests (*see, People v Chestnut, supra,* p 982). Moreover, inas-

much as the officers were justified in approaching the defendants for the purposes of inquiry, the defendants' abandonment of the property at that time cannot, as the defendants argue herein, be attributed to their subsequent arrests. Accordingly, since abandoned property is outside the scope of constitutional provisions (*People v Howard, supra; People v Pittman,* 14 NY2d 885), suppression of the property was not warranted. Secondly, the defendants' postarrest statements were admissible even assuming that the arrests were illegal since the taint, if any, from the unlawful arrests was attenuated prior to the time that the defendants were questioned (*Brown v Illinois,* 422 US 590). This conclusion is supported by the fact that during the one-hour period which transpired between the defendants' arrests and the time the police advised them of their *Miranda* rights, the officers had acquired probable cause to arrest by means of their on-the-scene investigation (*see, People v Calhoun,* 78 AD2d 658).

The defendants' other contentions have been reviewed and are found to be without merit.

THOMPSON, J. P., WEINSTEIN and RUBIN, JJ., concur.

Order of the Supreme Court, Queens County, dated March 15, 1983, reversed, on the law and the facts, defendants' motions to suppress physical evidence and statements denied, and matter remitted to Criminal Term for further proceedings on the indictment.