■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD MILLER, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Westchester County (Nastasi, J.), rendered August 27, 1985, convicting him of forgery in the second degree (three counts), grand larceny in the third degree, criminal possession of a forged instrument in the second degree (13 counts) and criminal possession of stolen property in the third degree (two counts), upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress physical evidence and statements he made to law enforcement officials.

Ordered that the judgment is affirmed.

The defendant contends that the hearing court erred in denying his motion to suppress physical evidence seized incident to his arrest and his statements to law enforcement officials as the tainted fruits of an arrest that was not predicated upon probable cause. The following facts were adduced at the suppression hearing.

Upon returning to work at about 3:00 P.M. on August 28, 1984, an employee of a retail store in Hartsdale noticed the defendant rummaging through the store's garbage dumpster, located in the rear of the parking lot. The employee observed the defendant remove carbon copies of credit card receipts from the dumpster, look at them and then place the carbons in his pocket. The employee notified Sergeant Charles Maxwell, an off-duty policeman working as the store's security guard, of her observations and, thereafter, telephoned police headquarters.

Aware that such carbons could be used to produce fraudulent credit cards, Sergeant Maxwell approached the defendant, who continued to pick over the contents of the dumpster. The sergeant also noticed a car, with New Jersey license plates, parked next to the dumpster. The car was occupied by a child and a female passenger.

The sergeant identified himself, displayed his shield and asked the defendant what he was doing. The defendant replied that he was looking for something and simultaneously emptied his pocket and deposited the contents into the dumpster. The sergeant immediately retrieved the discarded items, which were several carbons of credit card receipts. In response to the sergeant's inquiries, the defendant could not produce any identification, but claimed to be an unemployed actor, living in New York City.

Shortly after the sergeant's initial inquiries, Police Officer Hugh Gallagher arrived on the scene in response to a radio dispatch of a suspicious person in the store's rear parking lot. The sergeant informed the officer about his observations and the results of his inquiries, and turned over the carbon receipts he had retrieved from the garbage. In reply to Officer Gallagher's questions, the defendant repeated that he had no personal identification. The defendant further denied ownership of the parked car, but admitted he was the operator. The defendant had no registration or insurance card for the motor vehicle and alleged that he was transporting it for a friend. Officer Gallagher also asked the female passenger (the codefendant Patricia Thornton) for identification. Thornton produced a New York State driver's license and a credit card in the name of Christine Oliveri. Computer checks requested from headquarters disclosed no active warrants for either the defendant or Christine Oliveri, and a stolen vehicle check also proved negative.

The sergeant then asked the defendant, who appeared nervous, if he would open the trunk of the car. The defendant readily complied by handing the sergeant the keys. Inside the trunk were three sealed boxes containing new VCR equipment. Neither the defendant nor the woman in the car could produce any sale receipts for the equipment. At this point, Detective John Pennella arrived on the scene and after being briefed, he asked the female passenger for identification. This time Thornton displayed a driver's license and a Social Security card in the name of Valentina Gorman. Confronted with her prior claim to be Christine Oliveri, Thornton said she had found the Oliveri identification in the car and that she was

actually Valentina Gorman. The detective then examined a label on one of the sealed boxes of VCR equipment, which indicated that the merchandise had been purchased from a nearby store called Service Merchandise; Detective Pennella knew that the store had been recently plagued by fraudulent credit card purchases. Detective Pennella asked the defendant about the boxes in the trunk. The defendant again denied any knowledge of the trunk's contents. The defendant explained that he was merely transporting the vehicle for an acquaintance for $100 and that he had just picked it up at a nearby shopping center. Based upon the additional information imparted to him by the other officers on the scene and their close proximity to Service Merchandise, Detective Pennella believed the VCR equipment to have been fraudulently purchased with counterfeit credit cards and directed Officer Gallagher to arrest the defendant and Thornton for possession of stolen property. After being placed in custody and advised of their *Miranda* rights, the defendant and Thornton were transported to Service Merchandise. Upon their arrival, a store employee identified the defendant and Thornton as recent credit card purchasers, using cards in the names of Brian Smith and Stephanie Feingold. While seated in the police car, Thornton was observed trying to hide some papers under her seat. The papers were several identifications, traveler's checks and credit cards, including those in the names of Stephanie Feingold and Brian Smith. Subsequently, on August 29, the defendant also made postarrest statements to a law enforcement official after waiving his *Miranda* rights.

The defendant argues that his statements and the seized physical evidence should have been suppressed because the police acted without probable cause at the time he was placed in physical custody and transported to Service Merchandise. The defendant concedes, and it can hardly be doubted, that Sergeant Maxwell and Officer Gallagher, in exercising their common-law right of inquiry, were justified in approaching the defendant and his female companion in an effort to obtain explanatory information *(People v Carrasquillo,* 54 NY2d 248, 252-253; *People v De Bour,* 40 NY2d 210, 223). Such an inquiry was justified by the suspicious behavior of the defendant in removing carbons of credit card receipts from a retail store's dumpster. Furthermore, the defendant's temporary detention while the officers awaited the result of the respective computer checks for a stolen vehicle report or any outstanding arrest warrants never escalated to the level of a forcible stop. Nor was the defendant detained against his will when the

sergeant requested and received permission to open the trunk of the automobile. There was no display of weapons, nor did the officers act in a threatening or abusive manner. They never suggested to either the defendant or Thornton that they were not free to leave and no move was made to frisk either *(see, People v Carrasquillo, supra,* at 252-253; *People v Medina,* 107 AD2d 302). Nevertheless, the defendant maintains that the police never acquired any evidence suggesting that a crime had been committed by either he or Thornton until after their arrest, when an employee of Service Merchandise identified them as customers who purchased VCR equipment with credit cards issued in the names of other persons. In support of his contention, the defendant relies heavily upon the fact the computer checks proved negative and the VCR equipment had yet to be reported stolen. We disagree.

The sole fact the police had not received, at the time of the defendant's arrest, a report of the commission of a crime does not preclude a finding of probable cause *(see, e.g., People v Medina, supra; People v Chestnut,* 91 AD2d 981). Here, the totality of the facts known to the officers, at the scene of the defendant's arrest, combined with their experience and training, provided them with probable cause to believe that defendant had, in fact, committed the crime of criminal possession of stolen property *(see,* CPL 140.10 [1] [b]; *People v De Bour, supra,* at 223). Specifically, the known information included the defendant's removal of discarded carbons of credit card receipts, which could be used to obtain counterfeit credit cards; the defendant's failure to produce any personal identification or documents for the parked car he admittedly had operated; the lack of possession by the defendant or his companion of any sales receipts for the merchandise discovered in the trunk of the car; the origin of the merchandise in a nearby store which the detective knew was a frequent target of credit card fraud; Thorton's possession of two sets of identification—including a credit card—in the names of different persons; and the highly dubious explanations proffered by the defendant with respect to his possession of the car and its contents. Moreover, based on the defendant's failure to produce a driver's license and his admission that he was operating the car, an arrest of the defendant for driving without a license was also warranted *(see,* Vehicle and Traffic Law § 509; *People v Gonzalez,* 116 AD2d 661, 662; *People v Griffin,* 116 Misc 2d 751, 758).

We have reviewed the defendant's remaining contentions

and find them to be without merit. Mollen, P. J., Thompson, Rubin and Eiber, JJ., concur.